**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARVELLOUS DAY ELECTRIC (S.Z.) CO., LTD.,** | ) | **No. 11 C 8756** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Judge John J. Tharp** |
| **v.** | ) | |
| | ) | |
| **ACE HARDWARE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| **MARVELLOUS DAY ELECTRIC (S.Z.) CO., LTD.,** | ) | |
| | ) | |
| | ) | **No. 11 C 8768** |
| **Plaintiff/Counterdefendant,** | ) | |
| | ) | |
| **and** | ) | **Judge John J. Tharp** |
| | ) | |
| **HSIN-WEI WU** | ) | |
| | ) | |
| **Counterdefendant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HOLIDAY BRIGHT LIGHTS, INC. and RICHARD MARTINI,** | ) | |
| | ) | |
| | ) | |
| **Defendants/Counterplaintiffs.** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marvellous Day Electric (S.Z.) Co., Ltd. ("Marvellous Day") filed two

separate lawsuits—No. 11 C 8756 against Ace Hardware Corp. ("Ace"), and No. 11 C

8768 against Holiday Bright Lights, Inc. ("HBL") and Richard Martini—alleging patent

infringement, false patent marking, and violations of the Lanham Act, Illinois Uniform

Deceptive Trade Practices Act ("UDTPA"), and Illinois Consumer Fraud and Deceptive

Business Practices Act ("Consumer Fraud Act"). Ace and HBL move to dismiss all

counts other than Marvellous Day's claims of patent infringement. Martini, an officer of HBL, moves to dismiss all counts pending against him.

Besides the defendants' motions to dismiss, three other motions are pending in each case. The defendants each move to stay Marvellous Day's patent infringement claims pending reexamination of the relevant patent by the U.S. Patent and Trademark Office ("USPTO"). Defendants HBL and Martini also move for an entry of default against Counterdefendant Hsin-Wei Wu. Finally, Marvellous Day moves for leave to file instanter a consolidated surreply to each of the defendants' motions.

For the reasons stated below, the Court grants defendants' motions to dismiss all of Marvellous Day's claims other than the patent infringement claims. The Court further grants the defendants' motion to stay the patent infringement claims pending the USPTO's reexamination. The Court denies the defendants' motion for entry of default against Wu. And the Court grants Marvellous Day's motion for leave to file a consolidated surreply; the Court considered Marvellous Day's surreply in deciding the preceding motions.

## BACKGROUND[1]

This litigation relates to LED light bulbs used in Christmas light strands. Prior to March 1, 2010, Wu invented a new ornamental design for an LED light bulb. Wu applied for and obtained a United States design patent, Number D627,494 (the "'494 Patent"), issued on November 16, 2010. Marvellous Day owns all rights to the '494 Patent, including the right to sue for infringement. Using the design of the '494 Patent,

---

[1] The Court accepts Marvellous Day's factual allegations as true for the purposes of the defendants' Rule 12(b)(6) motion. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

Marvellous Day manufactured and sold ornamental LED string lights, which HBL, under the control of Martini, imported into the United States. HBL sold the lights to Ace, which in turn sold them to American consumers through its Ace Hardware stores.

Marvellous Day's lights were advertised as being "always lit."[2] According to Marvellous Day, "always lit" means that when an individual LED bulb in a string of lights is damaged or burned out the remaining lights will remain lighted and the individual bulb can be replaced without extinguishing the remaining lights. Therefore, "always lit" light bulbs are easily replaceable.

Beginning sometime in 2011, HBL, under Martini's direction, began making, using, offering to sell, or selling within the United States LED light sets which used the same ornamental feature of the '494 Patent, but which were not produced by Marvellous Day. HBL sold these allegedly infringing lights to Ace and to other customers, and Ace in turn sold the allegedly infringing lights to consumers. Ace and HBL advertised and sold these lights as "always lit." The new lights, however, are not replaceable when the bulbs are broken and burned out, and Marvellous Day alleges that they are therefore not "always lit."[3] Marvellous Day alleges that the defendants' use of the "always lit" term amounts to a false or misleading description of fact which misrepresents the nature, characteristics, or qualities of the LED bulbs. Marvellous Day claims that these actions

---

[2] By using the passive voice in its complaints, Marvellous Day does not allege *who* advertised its light bulbs as being "always lit." Cmplt. against Ace ¶ 9. For the purposes of these motions, it makes little difference—the Court accepts as true that consumers understood Marvellous Day's lights to be "always lit."

[3] The defendants appear to concede that the phrase "always lit" is not literally true, but they argue that it constitutes non-actionable puffery. The Court does not address that argument since it is granting the defendants' motions on other grounds.

violate the Lanham Act (15 U.S.C. § 1125(a)), the UDTPA (815 ILCS § 510), and the Consumer Fraud Act (815 ILCS § 505).

Marvellous Day also asserts claims against Ace (only) for falsely advertising, without obtaining Marvellous Day's consent, that the allegedly infringing LED bulb is "patented." Marvellous Day contends that Ace used the term "patented" with the intent of deceiving and inducing the public to believe that the bulbs were made or offered for sale with the consent of the patentee. It claims that this constitutes a False Patent Marking in violation of 35 U.S.C. § 292 and that, if Ace's allegedly infringing bulbs do not violate the '494 Patent, then Ace's use of the term "patented" is a false or misleading description of fact.[4] Marvellous Day also alleges that Ace intended to deceive and induce consumers to believe that the bulbs were made or offered for sale by or with the consent of the patentee. Ace's use of the word "patented" allegedly violates the Lanham Act, the UDTPA, and the Consumer Fraud Act.

Shortly after Marvellous Day filed these lawsuits, HBL requested that the USPTO reexamine the validity of the '494 Patent. The USPTO granted the reexamination, and is now in the process of determining whether prior art invalidates the patent. The parties agree that if the USPTO invalidates the '494 Patent, Marvellous Day's patent infringement claims will be eliminated. If the USPTO upholds the patent, however, the patent infringement claims will proceed.

---

[4] Conversely, if the bulbs do violate Marvellous Day's patent, then it is true that they are "patented," but in that case Ace has committed patent infringement.

**DISCUSSION**

**I.       Motions to Dismiss**

      **A.       "Always Lit" False Advertising Claims**

           **1.       Lanham Act**

The Court first examines Marvellous Day's claim that the defendants violated the Lanham Act[5] by falsely advertising and selling string lights as "always lit."  Even accepting as true Marvellous Day's allegations that "always lit" means that individual light bulbs can be replaced without extinguishing the remaining lights in a string, and that the individual light bulbs in the defendants' string lights are not replaceable, rendering them not "always lit," Marvellous Day lacks standing to bring a false advertising claim, and in any event fails to allege the necessary elements of a plausible Lanham Act claim.

To state a claim for false or deceptive advertising under the Lanham Act, a plaintiff must allege:

_____

[5] The Lanham Act states, in relevant part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which—

    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a).

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;

(2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;

(3) the deception is material, in that it is likely to influence the purchasing decision;

(4) the defendant caused its false statement to enter interstate commerce; and

(5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). When—as alleged here—a statement is "literally false as a factual matter," the first and second requirements are satisfied and "the plaintiff need not show that the statement either actually deceived customers or was likely to do so." *Id.* at 820. Even so, to establish standing to bring a false advertising claim under the Lanham Act, the plaintiff must allege that it is a commercial competitor of the defendant and that it has suffered or will likely suffer a "discernible competitive injury." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 575 (7th Cir. 1993) ("In order to have standing to allege a false advertising claim, however, the plaintiff must assert a discernible competitive injury."); *Miche Bag, LLC v. Be You, LLC*, No. 11 C 720, 2011 WL 4449683, *5 (N.D. Ill. Sep. 26, 2011) ("[P]leading an unfair competition claim under § 1125(a)(1)(B) requires allegations of commercial competition."); *McMahon v. City of Chicago*, No. 98 C 8026, 2000 WL 35734767, *3 (N.D. Ill. Oct. 13, 2000) (requiring "proof of commercial competition"). Further, "[c]laims that allege false representation or false advertising under the Lanham Act are subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b)." *Conditioned*

*Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006); *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements.").

Marvellous Day fails to establish standing to bring a false advertising claim under the Lanham Act because it has not alleged that it is a commercial competitor of either Ace or Holiday Bright Lights. It does not allege the required "discernible competitive injury." *L.S. Heath*, 9 F.3d at 575. To the contrary, Marvellous Day's complaints establish that the parties operate at different levels of the distribution chain, and therefore they are not competitors. Marvellous Day manufactures LED lights (Cmplt. against HBL ¶ 9), HBL imports and resells the lights to retailers (*id.*), and Ace sells the lights to consumers through its retail stores (Cmplt. against Ace ¶ 8). To establish competition, "courts require the plaintiff to show that it competes at the same level of business as the defendant." *Medallion Prods., Inc. v. McAlister*, No. 06 C 2597, 2008 WL 5046055, *5 (N.D. Ill. Nov. 20 2008); *see also Gail Green Licensing & Design Ltd. v. Accord, Inc.*, No. 05 C 5303, 2006 WL 2873202, *5 (N.D. Ill. Oct. 5, 2006) (finding that plaintiffs "cannot assert a discernible competitive injury" where plaintiff developed, acquired and licensed products and defendants manufactured and sold products); *Goodloe v. Nat'l Wholesale Co., Inc.*, No. 03 C 7176, 2004 WL 1631728, *12 (N.D. Ill. July 19, 2004) (parties not competitors where plaintiff sold electronics at retail to consumers and defendant sold electronics at wholesale to retailers).

In its opposition to the motions to dismiss, Marvellous Day (for the first time) asserts that it competes with both Ace and HBL. Opp'n to HBL's MTD at 7 ("as

Defendants are competitors of Plaintiff, Plaintiff has standing to raise a false advertising claim"). But it provides no details or explanation for how it competes with the defendants and fails to reconcile that claim with its the allegations in its complaints that establish that Marvelous Day and the defendants operate at different levels of the distribution chain. Inconsistent (and conclusory) arguments in a response brief to a motion to dismiss are grossly inadequate to cure Marvellous Day's defective allegations regarding competition. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (enforcing "axiomatic rule that a plaintiff may not amend its complaint in his response brief"). Because the allegations in the complaints establish that the parties operate at different levels of the distribution chain, Marvellous Day cannot show competitive injury for purposes of establishing standing under the Lanham Act.

Even if Marvellous Day did have standing to bring a false advertising claim, it would still fail to establish necessary elements required by the Lanham Act. Though it alleges that the advertisements were literally false and therefore that consumer deception is presumed, Marvellous Day falters on the required "materiality" and "causation" elements.

The Seventh Circuit's test for materiality is whether a false statement "is likely to influence the purchasing decision." *Hot Wax*, 191 F.3d at 819. This requirement is based on the premise that not all deceptions affect consumer decisions. For example, in *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997), the Second Circuit determined that Motorola's advertisement that its SportsTrax device provided sports information "direct from each arena" was literally false, but irrelevant to consumer

decisions. Consumers merely wanted scores and statistics to be updated quickly; they did not make purchasing decisions based on whether data was collected firsthand or through live sports broadcasts. *Id.*

Marvellous Day makes no allegations whatsoever that the term "always lit" actually influences any purchasing decision. It fails to offer any qualitative, quantitative, or even anecdotal evidence that might provide some basis to support its conclusory claim that the "always lit" phrase is material to consumer purchasing decisions. Instead, it argues that "always lit" misrepresents an inherent quality or characteristic of a product, and that materiality is therefore presumed. Opp'n to HBL MTD at 6. Marvellous Day asserts that courts in other jurisdictions have accepted that evidence showing "the defendants misrepresented an inherent quality or characteristic of the product" may establish materiality. *See, e.g., Johnson & Johnson*, 299 F.3d at 1250. The use of the term "inherent quality" as a requirement in Lanham Act cases appears to trace its origins to *Fur Info. & Fashion Council, Inc. v. E.F. Timme & Son, Inc.*, 501 F.2d 1048, 1050-51 (2d Cir. 1974), which rejected a false advertising claim against an artificial fur manufacturer that had run an advertisement negatively portraying people who wore natural fur as anti-environment. There, the Second Circuit affirmed dismissal because the advertisement made no false representations about the defendant's goods, and the Lanham Act "was intended to apply only to misrepresentation relating to the *inherent qualities* of defendant's own goods." *Id.* at 1051 (emphasis added). Courts later misinterpreted this holding—which merely required a misrepresentation about the product being advertised—as meaning that any misrepresentation about an "inherent quality" satisfied the materiality element. *See, e.g., Vidal Sassoon, Inc. v. Bristol-Myers*

*Co.*, 661 F.2d 272, 278 (2d Cir. 1981) (allowing Lanham Act claim where false statement was so misleading "that the reasonably intelligent consumer would be deceived about the product's inherent quality or characteristics").

But, respectfully, the fact that a quality is "inherent" says nothing at all about whether that quality is material to a consumer's purchasing decision. The Court can easily imagine misrepresentations of "inherent qualities or characteristics" of a product that would be totally irrelevant to consumers. For example, Christmas light strands might (conceivably) utilize either copper or aluminum internal wiring. The composition of the wiring in a light strand is an "inherent quality" of the product as well, but it would not be material if (as seems likely) consumers would not purchase Christmas lights based on that quality.

While it is possible that bulb replaceability actually might influence consumers' purchasing decisions, and therefore be a *material* quality, Marvellous Day fails to allege anything of the sort. *See* Opp'n to Ace MTD at 9 ("[M]ateriality here is presumed and need not be pleaded."). Therefore, Marvellous Day's bald allegations that "always lit" refers to an "inherent quality or characteristic" of Christmas lights is insufficient to establish that the advertisement is material such that it would affect consumer purchasing decisions.

Marvellous Day also fails to allege facts showing that the defendants' "always lit" claims have caused (or are likely to cause) injury. Marvellous Day argues that it properly alleged an injury by stating in the complaint that "its own LED string lights are advertised and sold as 'always lit.'" Opp'n to HBL MTD at 7. Marvellous Day would have the Court infer, from this allegation, that consumers may buy the defendants' lights

10

instead of Marvellous Day's lights because of the false statement. *Id.* But Marvellous Day never alleged in its complaints that it lost (or was likely to lose) sales because of the defendants' "always lit" advertisements to consumers, much less provide factual allegations that would make such a claim plausible. To the contrary, the allegations in the complaints render it unlikely that Marvellous Day could lose sales based on the defendants' allegedly false advertising. As discussed above, per the complaints, Marvellous Day operates at the wholesale level of distribution; the complaints state that Marvellous Day imported its lights into the United States through other companies, which then marketed the lights at the retail level; there is no indication that Marvellous Day sells Christmas lights directly to consumers. Marvellous Day does not allege that consumers are (or could be) faced with the option of buying lights from either Marvellous Day or from the defendants. If sales of the allegedly infringing lights at the retail level diminished the sales of Marvellous Day's customers, that fact would not provide a cause of action to Marvellous Day (as discussed above, that is why Marvellous Day lacks standing—it does not compete directly with the defendants). Any injury to Marvellous Day would be at least one step further removed, occurring only if and when its own customers decreased their orders on the basis of reduced retail demand for Marvellous Day's lights. The complaints come nowhere close to alleging facts necessary to make that scenario plausible. It alleges only that "the activities complained of in this count occurred to [its] injury and damage." "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Marvellous Day chose not to allege facts showing that it

lost or is likely to lose sales as a direct result of defendants' "always lit" advertisements, it fails to allege injury.

Because Marvellous Day has no standing to bring a false advertising claim against the defendants, and because it fails to allege materiality and injury, Count IV of the complaint against Ace and Count II of the complaint against HBL are dismissed. Marvellous Day's complaints establish that Ace and HBL are not its competitors, and therefore Marvellous Day would be unable cure its pleading defects and the claims are dismissed with prejudice.

### 2. UDTPA and Consumer Fraud Act

By failing to state a claim for relief under the Lanham Act, Marvellous Day also fails to state claims under the UDTPA and Consumer Fraud Act. Courts routinely hold that UDTPA and Consumer Fraud Act claims are subject to the same test as Lanham Act claims. "Claims for unfair competition and deceptive business practices brought under Illinois statutes are to be resolved under principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994); *see also M. Arthur Gensler, Jr. & Assoc., Inc. v. Strabala*, No. 11 C 3945, 2012 WL 600679, *3 (N.D. Ill. Feb. 21, 2012) ("[Plaintiff] correctly concedes that its claims under the [Consumer Fraud Act and UDTPA] rise and fall with its Lanham Act claims."); *Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, *4 (N.D. Ill. Mar. 20, 2007) ("claims under the UDTPA 'are to be resolved according to principles set forth under the Lanham Act'"); *MJ & Partners Rest. Ltd. v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (dismissing Consumer Fraud Act and UDTPA claims because Lanham Act claim was dismissed); *AT&T Corp. v. Synet, Inc.*, No. 96 C 110, 1997 WL 89228, *4 (N. D. Ill. Feb. 13, 1997) ("claims under . . . the IDTPA are to be resolved according to principles set

forth under the Lanham Act"). "Illinois courts look to federal case law and apply the same analysis to state infringement claims." *Spex*, 847 F. Supp. at 579.

Because Marvellous Day's Lanham Act claims fail, so too do its UDTPA and Consumer Fraud Act claims. Counts VI and VIII of Marvellous Day's complaint against Ace and Counts III and IV of its complaint against HBL are dismissed with prejudice.

### B. "Patented" False Advertising Claims

Marvellous Day also alleges that Ace (but no other defendant) violated the Lanham Act, UDTPA, and Consumer Fraud Act by advertising on its website that bulbs from sources other than Marvellous Day are "patented." These claims fail for the same reasons as the "always lit" false advertising claims and also because Marvellous Day never even alleges that the "patented" claim is false.

First, and as discussed above, Marvellous Day cannot establish standing to bring a false advertising claim under the Lanham Act because it does not allege that Ace is a competitor. Second, Marvellous Day cannot establish that Ace's description of the lights as "patented" is in any way material to consumer purchasing decisions. The Court rejects Marvellous Day's argument that the term "patented" amounts to a description of the light bulbs' "nature, characteristics, or qualities," and in any event it is highly unlikely (and hence, implausible) that consumers take into account Christmas light bulbs' patent status when making their purchasing decisions. Third, Marvellous Day fails to allege that Ace's use of the term "patented" has caused, or is likely to cause, injury. Fourth and finally, Marvellous Day fails even to allege that Ace's advertisement is false. Marvellous Day does not allege that the bulbs are not covered by a patent other than the '494 Patent, so even accepting Marvellous Day's allegations that the bulbs are not covered by the '494 patent, the term "patented" is not necessarily false. For these reasons, Marvellous Day

fails to state a valid claim under the Lanham Act, and Count III of its complaint against Ace is dismissed with prejudice.

Marvellous Day's UDPTA and Consumer Fraud Act claims based on Ace's use of the term "patented" rise and fall with its Lanham Act claim. Therefore, Counts V and VII of Marvellous Day's complaint against Ace are also dismissed with prejudice.

### C.  False Patent Marking Claim

Separate and apart from its false advertising claims, Marvellous Day also alleges that Ace committed false patent marking under 35 U.S.C. § 292 by advertising light strings as "patented." The false patent marking statute states, in relevant part:

> Whoever, without the consent of the patentee, . . . uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States . . . the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold or imported into the United States by or with the consent of the patentee . . . Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). Allegations that a party violated the statute must be pled with particularity. *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011).

To satisfy the statute, Marvellous Day is required to plead that Ace used the term "patented" with the intent of deceiving consumers into believing that the light strings were made or sold by Marvellous Day, or with Marvellous Day's consent. Marvellous Day's only allegation regarding Ace's intent is a generalized allegation that Ace acted with the intent of deceiving the public. Cmplt. against Ace ¶ 24. This is insufficient to state a claim.

*BP Lubricants* is on point, and requires that the Court dismiss Marvellous Day's false patent marking claim.[6] In *BP Lubricants*, the plaintiff filed a *qui tam* action in this district alleging that the defendant continued marking its motor oil bottles with patent numbers even after the patent had expired. 637 F.3d at 1309. In its complaint, the plaintiff failed to allege any facts inferring that the defendant was aware of the patent's expiration, but rather made only the general allegation that the defendant knew or should have known that the patent had expired, and that it acted with the intent to deceive the public. *Id.* at 1311. The district court denied the defendant's motion to dismiss, but the Federal Circuit reversed, directing the district court to dismiss the complaint. *Id.* at 1309-11. The court found that "a complaint must in the § 292 context provide some objective indication to reasonably infer that the defendant" intended to deceive the public. *Id.* at 1311. "'[T]he bar for proving deceptive intent [in false marking cases] is particularly high,' requiring that relator show 'a purpose of deceit, rather than simply knowledge that a statement is false.'" *Id.* at 1313 (quoting *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363).

Marvellous Day fails to allege any facts whatsoever indicating that Ace intended to deceive consumers into believing that the advertised light strands were made or sold by Marvellous Day, or with Marvellous Day's consent. Therefore, Marvellous Day fails to satisfy the heightened pleading requirements proscribed by Rule 9(b) and *In re BP Lubricants*, and Count II of its complaint against Ace is dismissed. Because Marvellous

---

[6] In lawsuits involving the patent laws, Federal Circuit law is controlling. *See Heartstation, Inc. v. J.L. Indus., Inc.*, No. 02 C 5994, 2003 WL 1826130, *2 (N.D. Ill. Apr. 7, 2003) ("In patent infringement cases, Federal Circuit law is controlling . . . ."); *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000) ("Federal Circuit law is controlling as to issues that are unique to patent law.").

Day could conceivably cure its failure to satisfy the heightened pleading standards, and because Marvellous Day asked (in the alternative) for leave to amend, this count is dismissed without prejudice and Marvellous Day is granted leave to amend Count II of its complaint against Ace.

### D. Martini's Motion to Dismiss Patent Infringement Claims

The defendants also move to dismiss Martini from the case,[7] arguing that Marvellous Day failed to allege alter ego or veil piercing. Martini points to case law stating that the corporate veil shields a company's officers from personal liability for direct patent infringement committed in the name of the corporation, unless the corporation is the officer's "alter ego." *See Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). Marvellous Day responds first that it is not necessary to plead in the complaint that the corporate veil has been pierced, and second that Martini can be liable for *inducing* patent infringement even if the corporate veil was not pierced.

Marvellous Day's first argument is incorrect—a plaintiff who seeks to pierce the corporate veil and hold an individual defendant liable for actions of the corporation must plead facts sufficient to pierce the veil. Corporate form is not an affirmative defense; if it were, there would be nothing to prevent plaintiffs from joining as a defendant anyone with an ownership stake in the corporation. To make plausible a claim that an individual is liable for acts of a corporation, the complaint should set forth facts sufficient to make plausible the theory that the corporate form was a sham and that the acts of the

---

[7] Because Counts II-IV of Marvellous Day's complaint against HBL and Martini have already been dismissed, the only other claim against Martini is Count I – Design Patent Infringement.

corporation were really the acts of the individual. It is no surprise, then, that "[n]umerous courts have granted motions to dismiss because the party seeking to pierce the corporate veil failed to adequately plead the alter ego doctrine." *RehabCare Group East, Inc. v. Certified Health Mgmt., Inc.*, No. 07 C 2923, 2007 WL 3334500, *2 (N.D. Ill. Nov. 8, 2007); *see also Source One Global Partners, LLC v. KGK Synergize, Inc.*, No. 08 C 7403, 2009 WL 2192791, *5 (N.D. Ill. July 21, 2009) (dismissing complaint for failure to properly allege corporate veil was pierced). Marvellous Day cites only to *Wordtech*, 609 F.3d at 1313, but that case nowhere indicates that a plaintiff seeking to prevail on a veil piercing theory need not plead facts that, if true, would result in the veil being pierced.

Marvellous Day's second argument, however, is well taken. "[C]orporate officers who actively assist with their corporation's infringement may be personally liable for inducing infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity and pierce the corporate veil." *Wordtech*, 609 F.3d at 1316 (emphasis in original, internal quotations omitted). Martini argues that Marvellous Day pleads only direct patent infringement, not inducement, but that is not clear from the face of the complaint. True, the complaint does not use the word "induce." But it clearly alleges that Martini *caused* HBL to directly infringe on the patent. Marvellous Day alleges that "Martini directed [HBL] to offer for sale . . . the infringing T5 LED light sets and [HBL] did offer for sale . . . the infringing T5 LED light sets." Cmplt. against HBL ¶ 20. Marvellous Day also alleged that after it informed Martini of HBL's infringement, HBL and Martini continued to infringe. *Id.* ¶¶ 23-24. Thus, Marvellous Day has alleged facts showing that Martini *knowingly* induced patent

infringement. Viewing the factual allegations in the light most favorable to Marvellous Day, the complaint properly states a patent infringement claim against Martini.

Because Marvellous Day properly alleged that Martini induced patent infringement, and because individual liability for inducement does not require piercing the corporate veil, Martini's motion to dismiss the patent infringement claim is denied.

## II. Motions to Stay

The defendants move to stay the remaining patent infringement claims pending reexamination of the '494 Patent by the USPTO. On December 16, 2011, HBL requested that the USPTO reexamine the '494 Patent, claiming that prior art is identical to Marvellous Day's claimed design. The USPTO granted reexamination on February 27, 2012, and entered a non-final rejection of the patent on June 29, 2012. The USPTO continues to proceed with the reexamination process. The defendants assert that only 48% of design patents survive reexamination, and Marvellous Day does not dispute this statistic.[8] Ace Mot. to Stay at 2. Marvellous Day opposes a stay, arguing that the delay involved would outweigh any benefits. It further argues that a stay would be inappropriate under the "seven traditional factors" to be considered.[9]

The Court agrees with the defendants and will stay resolution of the patent infringement claims pending reexamination. In deciding whether to stay a case, courts consider whether a stay will "(1) unduly prejudice or tactically disadvantage the non-

---

[8] The USPTO's non-final rejection of the '494 Patent likely indicates that the patent has even less than a 48% chance of being upheld.

[9] The seven "factors" that Marvellous Day identifies are not factors to consider in deciding whether to stay a case, but rather a list of "advantages to which courts have pointed that often merit a stay." *Genzyme Corp. v. Cobrek Pharm., Inc.*, No. 10 C 112, 2011 WL 686807, *3-4 (N.D. Ill. Feb. 17, 2011). Far from providing any basis to deny the defendants' motion to stay, these factors provide additional reasons why this case should be stayed.

moving party, (2) simplify the issues in question and streamline the trial, and (3) reduce the burden of litigation on the parties and on the court." *Genzyme*, 2011 WL 686807 at *1. Marvellous Day has not presented an argument that a stay would cause undue prejudice beyond the inherent inconvenience of delay. Though defendants may choose to continue their alleged infringement during the course of the stay, they run the risk that damages will continue to multiply during that time if the patent is upheld. And because the parties agree that the patent infringement claims will disappear if the '494 Patent is cancelled, the stay could eliminate the issues in question and terminate the burden of litigation on the parties and the court.

The Court stays further proceedings on Count I of each complaint pending the USPTO's reexamination of the '494 Patent.

**III.    Motions For Entry of Default**

HBL and Martini also move for entry of default with respect to their counterclaim against counterdefendant Wu. In their motion, the defendants admit that Wu has not been served with process, but argue that service is obviated because on February 27, 2012, counsel for Marvellous Day filed a motion to extend the time to answer on behalf of Wu. Marvellous Day opposes the motion on behalf of Wu, stating that the request for an extension as to Wu was made in error and without authority from Wu. No attorney has appeared in this action on behalf of Wu, and counsel for Marvellous Day informed the defendants on February 9, 2012—several weeks prior to the motion for extension—that they were not authorized to accept service on behalf of Wu personally.

The defendants' motion for entry of default cannot succeed. There is no dispute that the defendants have not properly served Wu with the counterclaim. And Wu did not voluntarily submit to the jurisdiction of the Court or otherwise waive the requirement of

service. Rather, counsel for Marvellous Day erroneously moved for an extension on behalf of Wu without authorization from Wu himself. The defendants argue that Marvellous Day does not have standing to raise arguments on behalf of Wu. Even if that were correct, Marvellous Day's attorneys would certainly have an obligation to this Court to point out their own error in mistakenly including Wu's name on the motion for extension. That fact, combined with the defendants' admission that they have not properly served Wu, is sufficient to deny the motion. Because Wu has not been served and has not voluntarily submitted to the Court's jurisdiction, defendants' motion for entry of default is denied.

**IV.    Motions For Leave to File Consolidated Surreply**

The Court grants Marvellous Day's motion for leave to file a surreply. The Court considered Marvellous Day's surreply—and the defendants' opposition thereto—in deciding the motions discussed above.

* * *

For all of these reasons, the Court grants Ace's motion to dismiss Counts II through VIII of the complaint in Case No. 11 C 8756. The Court also grants HBL and Martini's motion to dismiss Counts II through IV of the complaint in Case No. 11 C 8768, but it denies the motion to the extent that it seeks to dismiss all claims pending against Martini. As explained above, Count II of Marvellous Day's complaint against Ace (No. 11 C 8756) is dismissed without prejudice; all other dismissed counts are dismissed with prejudice. The Court further grants the defendants' motions to stay Count I in each case pending the USPTO's decision on reexamination of the '494 Patent. The Court also denies the defendants' motions for default as to Wu on their counterclaims and grants Marvellous Day's motions for leave to file a surreply.

Date: October 2, 2012

_____
John J. Tharp, Jr.
United States District Judge