# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **MARVELLOUS DAY ELECTRIC (S.Z.) CO., LTD.,** | No. 11 C 8756 |
| Plaintiff, | |
| v. | Judge John J. Tharp |
| **ACE HARDWARE CORPORATION,** | |
| Defendant. | |
| **MARVELLOUS DAY ELECTRIC (S.Z.) CO., LTD.,** | No. 11 C 8768 |
| Plaintiff/Counterdefendant, | |
| and | Judge John J. Tharp |
| **HSIN-WEI WU** | |
| Counterdefendant, | |
| v. | |
| **HOLIDAY BRIGHT LIGHTS, INC. and RICHARD MARTINI,** | |
| Defendants/Counterplaintiffs. | |

## MEMORANDUM OPINION AND ORDER

After the Court previously dismissed all of plaintiff Marvellous Day Electric (S.Z.) Co., Ltd.'s ("Marvellous Day") claims except for its design patent infringement claim, Marvellous Day repleaded some of the claims that had been dismissed and filed additional claims. *See* 2d Am. Cmplt. (Dkt. 74 in 11 C 8756) against defendant Ace Hardware Corp. ("Ace"); Am. Cmplt. (Dkt. 56 in 11 C 8768) against defendants Holiday Bright Lights, Inc. ("HBL") and Richard Martini. The defendants again advance motions to dismiss all of Marvellous Day's claims other

than its design patent infringement claim (asserted in both cases, and which is currently stayed pending reexamination by the Patent Office). For the reasons explained below, the Court grants the motions to dismiss.

## BACKGROUND[1]

According to its complaints,[2] Marvellous Day manufactures LED string lights ("Christmas lights") pursuant to United States design patent number D27,494 (the "'494 Patent"), which it owns. Prior to 2011, Marvellous Day sold its patented Christmas lights to HBL, which imported the lights into the United States. HBL then distributed the Christmas lights to Ace, which offered them for sale to American consumers. Sometime in 2011, HBL stopped purchasing Christmas lights from Marvellous Day and began purchasing them from another manufacturer. HBL then sold these new Christmas lights to Ace, which sold them at retail. Marvellous Day alleges (Count I in both cases) that these replacement lights violate the '494 Patent. Marvellous Day also alleges that HBL and Ace violated a host of other federal and state laws by selling the allegedly infringing Christmas lights. In 11 C 8756, it alleges that Ace committed false patent marking in violation of 35 U.S.C. § 292 (Count II); violated the Illinois Consumer Fraud Act ("CFA") and Illinois Unfair and Deceptive Trade Practices Act ("UDTPA") by using a photograph of Marvellous Day's Christmas lights in advertisements for the infringing lights (Counts III and IV); violated the CFA and UDTPA by using the term "patented" to describe the infringing lights (Counts V and VI); and violated the CFA and

---

[1] This opinion assumes familiarity with the facts as described in the Court's prior opinions in this case, *Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, 900 F. Supp. 2d 835 (N.D. Ill. 2012) and *Marvellous Day Elec. (S.Z.) Co., Ltd. v. Ace Hardware Corp.*, 2013 WL 2356008 (N.D. Ill. May 28, 2013).

[2] In reviewing the motions to dismiss, the Court accepts Marvellous Day's well-pleaded factual allegations as true for the purposes of the motion, and it draws all reasonable inferences in its favor. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013).

UDTPA by using the term "always lit" to describe the lights (Counts VII and VIII). Marvellous Day also alleges in 11 C 8768 that HBL violated the CFA and UDTPA by using the term "always lit" to describe the lights (Counts II and III).

Ace and HBL previously moved to dismiss all of Marvellous Day's claims except for its patent infringement claim. The Court granted the defendants' motions, dismissing each of Marvellous Day's non-patent infringement claims with prejudice, except for the false patent marking claim, which it dismissed without prejudice. Upon Marvellous Day's motion for reconsideration, the Court vacated its dismissal with prejudice of Marvellous Day's CFA and UDTPA claims, and instead dismissed those claims without prejudice. Marvellous Day then filed amended complaints against both Ace and HBL asserting the claims at issue here.

## DISCUSSION

### I. The Defendants' Arguments Based on Marvellous Day's Status as a Non-Competitor Were Previously Rejected.

Ace argues that Marvellous Day's CFA and UDTPA claims should be dismissed based on the law of the case because of the Court's October 2, 2012 order. In that order, the Court dismissed Marvellous Day's CFA and UDTPA claims (along with its Lanham Act claims) with prejudice because Marvellous Day had failed to allege that it competed with Ace or HBL. After Ace had filed its briefs with respect to the current motion to dismiss, however, the Court vacated the portions of its prior order that dismissed the CFA and UDTPA claims with prejudice because the CFA and UDTPA do not require competition between the plaintiff and the defendant. The Court's May 28, 2013 order sets forth more fully the reasons for that ruling and the Court will not address those arguments further in this opinion.

## II. Marvellous Day's False Patent Marking Allegations Fail to State a Plausible Claim.

Turning to the defendants' substantive arguments for dismissal, the Court first examines the false patent marking claim against Ace. The Court previously dismissed this claim without prejudice on the ground that Marvellous Day failed to plausibly allege that Ace intended to deceive consumers into believing that its advertised Christmas lights were made or sold by Marvellous Day. Marvellous Day amended the factual allegations in support of its claim, and Ace again moves to dismiss.

Marvellous Day alleges that during the time when Ace was purchasing Christmas lights manufactured by Marvellous Day, it truthfully advertised those Christmas lights to consumers as being "patented." 2d Am. Cmplt. (Dkt. 74) ¶ 25. After Ace and Marvellous Day terminated their relationship, Ace continued to advertise its Christmas lights—which were by then being produced by another manufacturer—as having the "Patented T5 LED bulb." *Id.* ¶¶ 29, 36. According to Marvellous Day, Ace used the word "patented" "with an intent to deceive customers so that they would continue to purchase such imitation products based on the false belief that the Imitation T5 LED light string was [Marvellous Day's] patented product previously offered and sold by ACE." *Id.* ¶ 34. The false patent marking statute states, in relevant part:

> Whoever, without the consent of the patentee, . . . uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, . . . the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee . . . Shall be fined not more than $500 for every such offense.

35 U.S.C. § 292(a). In order to state a valid claim for relief, allegations that a party violated the statute must be pleaded with particularity. *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011).

Marvellous Day's amended false patent marking claim fails for the same reason that its original claim failed: it has not alleged facts that could *plausibly* show that by describing its Christmas lights as "patented," Ace intended to deceive consumers into believing that Marvellous Day was the manufacturer. As the Court stated in its previous dismissal of the false patent marking claim, to survive summary judgment Marvellous Day "must in the § 292 context provide some objective indication to reasonably infer" that by using the word "patented," Ace intended to deceive the public into believing that its Christmas lights were still produced *by Marvellous Day*. 900 F. Supp. 2d at 846. It has not done so.

The complaint offers no factual allegations that would support an inference that the word "patented" conjures in the minds of consumers any association with Marvellous Day. Since 1836, the U.S. Patent and Trademark Office has issued millions of patents, including over 600,000 design patents. Table of Issue Years and Patent Numbers for Selected Document Types Issued Since 1836, http://www.uspto.gov/web/offices/ac/ido/oeip/taf/issuyear.htm (last visited Aug. 21, 2013). Marvellous Day alleges, however, that because Ace first used the term to describe Marvellous Day's Christmas lights, its *continued* use of the term was intended to deceive consumers into believing that nothing had changed, and that Ace's Christmas lights were still manufactured by Marvellous Day. But that allegation is also implausible. Marvellous Day itself argues in its allegations relating to false patent marking that Ace used the term "patented" not because it would to cause customers to think that the Christmas lights were manufactured by Marvellous Day, but "in order to communicate to consumers that the T5 LED light string product was superior to other light string products and to create further interest in and generate additional sales of the T5 LED light string product." 2d Am. Cmplt. (Dkt. 74) ¶ 30. As ACE points out in its brief, "[t]his is the antithesis of an intent to counterfeit. A motive to make products seem

generally innovative does not suggest a motive to have consumers believe that its T5 LED light string products were authorized by Plaintiff, or fell under Plaintiff's patent.

To establish a claim under § 292(a), Marvellous Day needs to show more than just that Ace intended to deceive consumers about the patent status of the product; it must show that Ace intended to deceive consumers into believing that the Christmas lights were manufactured *by Marvellous Day*. Using the word "patented" could not plausibly cause consumers to jump to the conclusion that the lights were manufactured by Marvellous Day, even though Ace previously sold patented Christmas lights that actually were manufactured by Marvellous Day, and Marvellous Day has pleaded no facts that support an inference that any consumers did so.[3] Therefore, Marvellous Day has failed to plead facts that would satisfy the heightened pleading standard that applies to false patent marking claims. *See Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011). Its false patent marking claim is therefore dismissed.

## III. Marvellous Day's CFA Claims Fail.

### A. Marvellous Day Need Not Allege Its Own Reliance To State A CFA Claim.

Next, the defendants move to dismiss all of Marvellous Day's CFA claims—Counts III, VI, and VIII in 11 C 8756 and Count III in 11 C 8768—because they do not allege that the defendants intended for *Marvellous Day* to rely on any deceptive act or practice. "To prove a private cause of action under [the CFA], a plaintiff must establish: (1) a deceptive act or practice

---

[3] The complaint contains only the conclusory allegation that "[c]onsumers who associated the qualities of unique and novel ornamentality with Plaintiff's T5 LED light string and viewed the false advertisement touting the "Patented T5 LED bulb" would be deceived as to the actual source of the goods." 2d Am. Cmplt. (Dkt. 74) ¶ 36. It does not even allege that there *were* such consumers, much less provide a factual basis to permit a plausible inference that consumers equated the phrase "Patented T5 LED bulb" with Marvellous Day. Perhaps if Ace had combined the term "patented" with some other reference that would point to its previous relationship with Marvellous Day—*e.g.*, by using phrases like "Still the Same Patented Design" or "Patented and Unchanged"—it might plausibly have intended to deceive consumers into believing that it was still selling lights manufactured by Marvellous Day.

by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 180, 835 N.E.2d 801, 850 (Ill. 2005). "Claims for violation of the Consumer Fraud Act are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure." *Greenberger v. GEICO General Ins. Co.,* 631 F.3d 392, 399 (7th Cir. 2011).

Here, Marvellous Day alleges that the defendants committed three deceptive acts. First, Marvellous Day alleges that Ace used a photo of Marvellous Day's Christmas lights, which featured removable and replaceable light bulbs, on its website to advertise for Christmas lights that were produced by another manufacturer and which do not have the same features. Second, Marvellous Day claims that Ace advertised the lights produced by the other manufacturer as "patented" even though they were not actually patented. And third, Marvellous Day alleges that both Ace and HBL described the other manufacturer's Christmas lights as "always lit," even though the lights did not comport with the definition of that term.

Each of Marvellous Day's claims are similar in that they allege that the defendants intended to deceive consumers, customers, or members of the public into believing that the Christmas lights they were selling possessed attributes that the lights did not actually have. Marvellous Day does not allege, however, that either defendant intended to deceive Marvellous Day itself. The defendants argue that the second element of a CFA claim requires that the defendant intend that the *plaintiff* rely on its deceptive statements. *See Avery*, 216 Ill.2d at 180, 835 N.E.2d at 850. If that is truly a requirement to state a CFA claim, then Marvellous Day's

7

CFA claims must fail because Marvellous Day does not allege that it was the target of Ace's deceptive advertisements.

Marvellous Day argues that when "a business . . . is asserting an ICFA action against another business, the defendant's intent prong is not required." Resp. Br. (Dkt. 67) at 10. For this proposition, Marvellous Day cites *Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 911-12 (N.D. Ill. 2012). But that is not what *Thrasher-Lyon* says. Rather, it says that non-consumers like Marvellous Day have *standing* to bring claims under the CFA so long as they allege a "consumer nexus"—*i.e.*, they allege deceptive "trade practices addressed to the market generally" or they "otherwise implicate[] consumer protection concerns." *Id.* at 912 (quoting *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 322, 783 N.E.2d 217, 220 (2d Dist. 2003)). Here, Marvellous Day alleges that the defendants intended to deceive consumers, and therefore it has adequately alleged a consumer nexus and it has *standing* to bring the CFA claims. The question, however, is whether Marvellous Day can establish the substantive requirements of a CFA claim even though it does not allege that the defendants intended *Marvellous Day* to rely on any of their alleged misrepresentations. *Thrasher-Lyon* does not resolve that issue.[4]

The defendants also rely on *Thrasher-Lyon* for the proposition that the plaintiff must still allege "the defendant's intent that the plaintiff rely on the deception" even where a non-consumer brings a CFA claim. *Id.* at 908. But again, *Thrasher-Lyon* is not directly on point. In

---

[4] In *Thrasher-Lyon*, the plaintiff, who had been involved in a traffic accident, attempted to assert CFA claims against the other driver's insurer which had allegedly sent her deceptive letters demanding payment. The court found that the plaintiff was not a "consumer" with respect to the CFA because she did not purchase or seek to purchase anything from the defendant. 861 F. Supp. 2d at 911. Because the plaintiff in *Thrasher-Lyon* alleged that the insurer sent deceptive letters to her only, not to any other consumers, the court found that she did not satisfy the "consumer nexus" test and therefore did not have standing to bring a CFA claim. *Id.* at 912.

8

that case, the claim was dismissed for failure to establish a consumer nexus, which Marvellous Day has established here. And the plaintiff in *Thrasher-Lyon* specifically alleged that the defendant intended that *she* rely on the defendant's deceptive statements. The court did not discuss the question at issue here: whether a non-consumer plaintiff can state a CFA claim where the defendant intended that *the consuming public*, not the plaintiff, rely on the deceptive statement. *Id.* at 908, 912. Rather, it merely restated the elements required to state a CFA claim.

Illinois state courts, on the other hand, have addressed this issue and have approved CFA claims by non-consumers where the plaintiff alleges that the defendant intended to deceive *consumers*, not the plaintiff itself. In *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 367 Ill. App. 3d 48, 61, 853 N.E.2d 770, 782 (1st Dist. 2006), *rev'd in part on other grounds,* 227 Ill.2d 381, 882 N.E.2d 1011 (Ill. 2008), the Illinois Appellate Court squarely addressed whether a plaintiff could bring a CFA claim on the theory that it suffered damages when a rival company intended to deceive consumers. In *Imperial Apparel*, the plaintiff alleged that the defendant ran an advertisement that falsely disparaged the plaintiff's business. *Id.* at 49-50. The plaintiff alleged that the false advertisement was intended to deceive consumers, and the defendant moved to dismiss on the ground that the complaint "contain[ed] no allegation that [the plaintiff] was in anyway [sic] deceived by its ad." *Id.* at 60. After the trial court dismissed the plaintiff's complaint, the Illinois Appellate Court reversed, finding that "nothing in the Consumer Fraud Act requires that a competitor-plaintiff be deceived by the false representation." *Id.* at 61. The court held that the case was "readily distinguishable" from cases stating that the CFA requires intent to deceive *the plaintiff* because those cases were brought by consumers while *Imperial Apparel* was brought "by a business whose goods were disparaged." *Id.*

9

Similarly, in *Empire Home Servs., Inc. v. Carpet Am., Inc.*, 274 Ill. App. 3d 666, 653 N.E.2d 852, (1st Dist. 1995), the appellate court reversed the lower court's dismissal of a CFA claim where the plaintiff alleged that the defendant intended to deceive consumers into believing that its goods and services were actually being provided by the plaintiff. The plaintiff alleged that the defendant held itself out to consumers as the plaintiff and deceived consumers into believing that they were actually purchasing goods and services from the plaintiff. *Id.* at 659. Although the defendant's deception was obviously aimed at consumers, not at the plaintiff itself, the court found that the plaintiff had alleged sufficient facts to state a cause of action under the CFA. *Id.*

Allowing a CFA action by a plaintiff who has been damaged by a defendant's attempt to deceive *consumers* furthers the Illinois legislature's purpose in passing the CFA, which was to "protect[] consumers *and others* against fraud, unfair methods of competition, and unfair or deceptive acts or practices in the conduct of any form of trade or commerce." *Price v. Philip Morris, Inc.*, 219 Ill.2d 182, 233-34, 848 N.E.2d 1, 32 (Ill. 2005) (emphasis added); *see also DOD Techs. v. Mesirow Ins. Servs., Inc.*, 381 Ill. App. 3d 1042, 1051, 887 N.E.2d 1, 9 (1st Dist. 2008) ("The Consumer Fraud Act is to be liberally construed to effectuate its purpose."). The defendants have not provided a compelling reason why Marvellous Day's CFA claims should be dismissed. There seems to be no logical reason why a plaintiff who is damaged by a deceptive act should not be able to state a CFA claim merely because the deception was directed towards consumers, rather than directed at the plaintiff itself. The cases, including *Avery*, stating that the CFA requires an allegation that the defendant intended to deceive the plaintiff involve the usual situation in which a plaintiff is harmed when the defendant attempts to deceive it.[5] But those

---

[5] The defendants cite to *Wafra Leasing Corp. 1999-A-1 v. Prime Capital Corp.*, 204 F. Supp. 2d 1120, 1124-25 (N.D. Ill. 2002), where the court dismissed a CFA claim on the ground that the complaint failed to allege that the defendant intended to deceive the plaintiff specifically. In

cases do not mean that a defendant is free under the CFA to use deceptive practices so long as the party deceived (in this case, consumers) is different than the party harmed (in this case, Marvellous Day). Therefore, the Court will not dismiss the CFA claims on the ground that Ace and HBL intended to deceive consumers, not Marvellous Day.

### B. Marvellous Day Has Not Adequately Alleged "Materiality."

The defendants also move to dismiss Marvellous Day's CFA claims on the ground that Marvellous Day has failed to allege materiality. The Court previously dismissed these claims (along with Marvellous Day's UDTPA claims) without prejudice on that basis, but Marvellous Day's amended complaints attempt to remedy the prior deficiencies in the materiality allegations. Under the CFA, "materiality is tested with a reasonable person standard—*i.e.*, whether the omission 'concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.'" *Kitzes v. Home Depot, U.S.A., Inc.*, 374 Ill. App. 3d 1053, 1061, 872 N.E.2d 53, 60-61 (1st Dist. 2007) (quoting *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 505, 675 N.E.2d 584 (Ill. 1996)).

The Court looks first at Marvellous Day's claims regarding Ace's use of the term "patented." In its prior opinion, the Court dismissed Marvellous Day's CFA and UDTPA claims

---

*Wafra*, the plaintiff alleged that defendant KPMG had made deceptive statements in an opinion letter. *Id.* at 1124. However, the letter itself stated that it was "intended solely for the use of the addressees," which did not include the plaintiff, and that it "should not be used by" anyone other than the addressees. *Id.* at 1124-25. The court held that "no reasonable reading of the letter shows that [the plaintiff] was intended to rely on it," and dismissed the CFA claim. *Id.* at 1125. *Wafra* is distinguishable. There, the plaintiff alleged that it was damaged by a deception that the defendant plainly did not intend—*i.e.*, because the defendant did not intend for the plaintiff to rely on the letter, the plaintiff could not bring a CFA claim for damages even if it was, in fact, deceived. Here, on the other hand, Marvellous Day alleges that it suffered damages from deceptive acts that the defendants plainly intended consumers to rely upon. According to Marvellous Day's complaints, the defendants intended to deceive consumers, and they were successful in achieving that goal, to Marvellous Day's detriment.

relating to the term "patented" because Marvellous Day argued only that the Christmas lights' patent status was an inherent quality that was presumptively material. 900 F. Supp. 2d at 845. The opinion went on to state that "it is highly unlikely (and hence, implausible) that consumers take into account Christmas light bulbs' patent status when making their purchasing decisions." *Id.*

To remedy the complete absence of any materiality allegation relating to this term in the prior complaint, Marvellous Day now alleges that "the 'patented' statement is material to a consumer's buying decision because consumers would prefer a product being claimed to have superior patented design qualities and consumers would associate the product and its source with such patented bulb shape and design qualities." 2d. Am. Cmplt. (Dkt. 74) ¶¶ 86, 101. This allegation still falls well short of plausibly alleging that use of the term "patented" is material to consumers purchasing strings of holiday lights. Marvellous Day argues, correctly, that the Court must draw all reasonable inferences in its favor, but a complaint must supply sufficient facts on which to base reasonable inferences. Here, the second amended complaint supplies the inference—*i.e.*, a conclusion that consumers take the patent status of the bulbs used in strings of holiday lights into account when choosing which light strings to purchase—but no facts at all to support it. Marvellous Day argues in its brief that "the existence of a patent could cause a consumer to believe that the product is of superior quality to other products on the market without a patent mark, and thus increase the consumer's willingness to buy the patented product," Dkt. 76 at 4, but the possibility that the term "patented" is material to consumers is not enough to state a claim; "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's second amended complaint provides no facts whatsoever to

support an inference that any consumers actually were, rather than possibly could have been, influenced in their purchasing decisions by use of the term "patented" on defendants' marketing materials.

Marvellous Day's allegations relating to Ace and HBL's description of their Christmas lights as "always lit" suffer from the same defect. The Court dismissed Marvellous Day's initial claim based on the defendants' use of this term, noting that Marvellous Day had made "no allegations whatsoever that the term 'always lit' actually influences any purchasing decision. It fails to offer any qualitative, quantitative, or even anecdotal evidence that might provide some basis to support its conclusory claim that the 'always lit' phrase is material to consumer purchasing decisions." 900 F. Supp. 2d at 842. Marvellous Day has done nothing to fill that void other than to assert that the term is material because consumers prefer Christmas lights that claim to have this feature, 2d Am. Cmplt. (Dkt. 74) ¶¶ 113, 124, and to add "by consumers" to its averment that the term "was understood ["by consumers"] to mean that if an individual bulb in a string of lights was damaged, or 'burned out', the remaining lights in a string of lights would remain lit and the individual bulb could be replaced without extinguishing the remaining lights." *Compare* Cmplt. (Dkt. 1) ¶ 9 *with* 2d Am. Cmplt. (Dkt. 74) ¶ 11.

These modest additions add nothing to the plausibility of the plaintiff's claims; the second amended complaint still fails to supply any factual information to support these claims despite the Court's invitation to supply some sort of "qualitative, quantitative, or even anecdotal evidence" relating to materiality. To say that a characteristic is material because consumers prefer products with that characteristic is a tautology; it provides no basis to assess the plausibility of the major premise. And a claim about what "consumers" understand a term to mean cannot be taken at face value; it requires some factual foundation. The assessment of

plausibility is context specific, and the Court is required to "draw on its judicial experience and common sense" in assessing plausibility, *Iqbal*, 556 U.S. at 679, but how can the Court assess the plausibility of the claim about what consumers understand the term "always lit" to mean when the complaint provides no factual information with which to make the assessment? It cannot: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotations omitted).

Finally, Marvellous Day's new allegations relating to Ace's alleged use of a photograph of Marvellous Day's "always lit" bulbs in advertisements for non-Marvellous Day bulbs also fail for the same reason. Marvellous Day alleges that Ace's photographs showed replaceable bulbs, but that the Christmas lights Ace actually sold did not contain replaceable bulbs. 2d Am. Cmplt. (Dkt. 74) ¶ 54. Marvellous Day has not alleged *facts* sufficient to show that replaceable bulbs (*i.e.*, the "always lit" features) are material to consumers, so there is plainly no basis to infer that photographs showing that the bulbs are replaceable are material. Marvellous Day's other allegations relating to the photographs are even more conclusory and far-fetched. It alleges that the photograph would have "induc[ed] members of the public to believe that [Ace's] light strings were made" by Marvellous Day. *Id.* ¶ 47; *see also id.* ¶¶ 48, 52-53. But it is implausible to believe, without any factual allegations, that consumers would recognize the Christmas lights in the photograph as being produced by Marvellous Day, or that even if the consumers did recognize them as Marvellous Day lights, that they would be more likely to buy them. Marvellous Day has not alleged any facts that showing that it has any brand recognition among consumers, much less that consumers (or a subset thereof) seek out Christmas lights

manufactured by Marvellous Day. Therefore, Marvellous Day's claims relating to Ace's photographs also fail for lack of materiality.[6]

### C. Marvellous Day Has Not Sufficiently Alleged "Causation."

The defendants next argue that Marvellous Day's CFA (and UDTPA) claims should be dismissed because it has not adequately alleged that their actions caused it damages. The Court's previous dismissal of Marvellous Day's CFA and UDTPA claims without prejudice was due in part, to Marvellous Day's failure to allege "that it lost (or was likely to lose) sales because of the defendants' [wrongful conduct], much less provide factual allegations that would make such a claim plausible." 900 F. Supp. 2d at 843. Marvellous Day now alleges that the defendants' deceptive conduct causes consumers to purchase competing Christmas lights, which "diminishes the demand for [Marvellous Day's Christmas lights] by consumers who would otherwise purchase T5 LED light strings manufactured by [Marvellous Day], as sold by its US distributors and retailers." 2d Am. Cmplt. (Dkt. 74) ¶¶ 56, 69, 82, 98, 108, 121. Marvellous Day further alleges that during the time when the defendants engaged in their allegedly wrongful conduct, Marvellous Day's sales of its Christmas lights "to U.S. customers dropped by approximately 65%." *Id.* ¶¶ 86, 101, 113, 124.

---

[6] Ace further argues that Counts III and IV of Marvellous Day's Second Amended Complaint in 11 C 8756 were improperly filed without leave of court and they should therefore be dismissed. Ace notes that the Court's October 2, 2012 order, which dismissed all of Marvellous Day's claims except for its design patent infringement claim, granted Marvellous Day leave to amend only its false patent marking claim. 900 F. Supp. 2d at 846. When Marvellous Day filed its amended complaint, however, in addition to amending that claim it also added two brand-new CFA and UDTPA claims alleging that Ace improperly used a photo of Marvellous Day's Christmas lights to advertise for the sale of Christmas lights produced by a different manufacturer. Although these new claims were technically filed without leave of Court, the Court addresses them on their merits and dismisses them for failure to sufficiently plead materiality and causation.

These allegations satisfy the first part of the court's prior prescription: they allege that Marvellous Day lost sales because of the defendants' wrongful conduct. But the allegations still fail to supply the second element: "factual allegations that would make such a claim plausible." The allegation that plaintiff's sales dropped by 65 percent does not suffice in this regard. The complaint alleges no facts from which one can plausibly infer that the drop in sales reflected (in whole or part) the deception of any consumers; for all we know, that drop in sales was due entirely to the fact that the defendants moved to another supplier and stopped buying Marvellous Day's light strings.[7] In that case, the loss would have occurred whether or not the defendants had engaged in any wrongful conduct. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007) (mere possibility of loss causation is insufficient to state a claim) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). The loss the plaintiff claims is, at best, consistent with the defendants' liability, but that is not enough: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Accordingly, the plaintiffs' CFA claims must be dismissed on this basis as well.

### IV. Marvellous Day's UDTPA Claims Also Fail.

The defendants also move to dismiss Marvellous Day's UDTPA claims relating to their use of the terms "patented" and "always lit." The defendants' substantive arguments related to the UDTPA are the same as the Court has just accepted in the CFA context: the defendants claim that Marvellous Day failed to adequately allege that the statements were material to consumers

---

[7] This point also highlights again the fact that Marvellous Day and the defendants operate at different levels of the distribution chain. *See* 900 F. Supp. 3d at 841-42. Marvellous Day did not sell directly to retail consumers, so an inference that the drop in its sales was caused by consumer deception seems particularly unwarranted in the absence of an evidentiary foundation.

purchasing decisions and that they caused Marvellous Day to suffer damages. The heightened pleading standard of Rule 9(b) applies to UDTPA claims as well. *See, e.g., Schwebe v. AGC Flat Glass N. Am., Inc.*, No. 12 C 9873, 2013 WL 2151551, *3 (N.D. Ill. May 16, 2013); *CardioNet, Inc. v. Lifewatch Corp.,* No. 07 C 6625, 2008 WL 567031, *2 (N.D. Ill. Feb. 27, 2008); *Gold v. Golden G.T., LLC,* No. 05 C 288, 2005 WL 2465815, *6 (N.D. Ill. Oct. 4, 2005); *Nakajima All Co., Ltd. v. SL Ventures Corp.,* No. 00 C 6594, 2001 WL 641415, *4 n. 6 (N.D. Ill. June 4, 2001). The Court therefore dismisses the UDTPA claims on the basis of the same pleading deficiencies.

*    *    *

For the reasons stated above, the Court grants the motions to dismiss of both Ace and HBL. In view of Marvellous Day's failure to cure the deficiencies that the Court previously identified, and the heightened pleading standard applicable to the plaintiff's CFA and UDTPA claims, the dismissal is with prejudice. Marvellous Day's failure to add any meaningful factual support for its claims despite a clear roadmap compels the conclusion that it has no facts to allege that would make its claims plausible.

Entered: August 27, 2013

John J. Tharp, Jr.
United States District Judge